IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MARQUAVIOUS CONLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 118-189 |
| | ) | |
| SCOTT WILKES, Warden; CLIFFORD BROWN, Unit Manager; and OFFICER ROBINSON, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Because he is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

### I. SCREENING OF THE AMENDED COMPLAINT

#### A. BACKGROUND

Plaintiff names as Defendants: (1) Scott Wilkes, Warden; (2) Clifford Brown, Unit Manager; and (3) Officer Robinson. (Doc. no. 14, p. 2.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On November 6, 2017, Plaintiff was at the Crisis Special Unit ("CSU") at ASMP. (Id. at 5.) Around 8:00 a.m., Plaintiff was verbally threatened through his cell door by an unknown

inmate ("unit worker") working in the CSU. (Id.)  The unit worker told Plaintiff he was going to kill him the first chance he got. (Id.)  After being threatened, Plaintiff immediately went to his cell door to inform Officer Robinson. (Id. at 12.)  Plaintiff shouted for Officer Robinson, which prompted the unit worker to come back to Plaintiff's cell and call him a snitch. (Id.)  Plaintiff then asked the unit worker to leave him alone. (Id.)  While speaking to the unit worker, Plaintiff noticed Officer Robinson looking in his direction, and when Officer Robinson and Plaintiff made eye contact, Officer Robinson immediately looked away and disregarded Plaintiff's shouts for help. (Id.)  The unit worker then walked away. (Id.)

A little while later, Officer Robinson came to Plaintiff's cell and asked if he wanted to see the doctor. (Id.)  At this time, Plaintiff told Officer Robinson about the threats made by the unit worker. (Id.)  Plaintiff begged Officer Robinson to tell Unit Manager Clifford Brown and Chief of Security Captain Collier about the threats. (Id.)  Officer Robinson said he would. (Id.)  Plaintiff next asked to not leave his cell until his life was not in danger, to which Officer Robinson did not respond and walked away. (Id.)

Soon after this, Officer Robinson returned, placed Plaintiff in handcuffs, and escorted him out of his cell. (Id. at 13.)  While being handcuffed, Plaintiff asked where the unit worker was and if anything had been done about the threats. (Id.)  Officer Robinson told Plaintiff not to worry and that he was ok. (Id.)  Officer Robinson escorted Plaintiff to the doctor and left Plaintiff alone to wait with his hands still cuffed. (Id.)  At this time, Plaintiff was approached by the unit worker. (Id.)  The unit worker told Plaintiff he should kill him now, but he walked off. (Id.)  Then, Officer Robinson returned and took Plaintiff to the nurse to check his vital signs. (Id.)  Plaintiff informed Officer Robinson about what the unit worker said, which Officer

Robinson replied "you ain't [sic] hurt yet, you'll be ok." (Id. at 14.) Officer Robinson also said he spoke to Unit Manager Brown who said he would handle it. (Id.)

While being escorted back to his cell by Officer Robinson, Plaintiff was attacked by the unit worker. (Id.) During the attack, Officer Robinson ran away and left Plaintiff alone. (Id.) Plaintiff was stabbed fifteen times. (Id.) Eventually, a nurse came to Plaintiff's aid and tried to pull the unit worker off Plaintiff by hitting the unit worker with a chair. (Id.) About eight minutes later, Officer Robinson came back and, along with the nurse, removed the unit worker from Plaintiff. (Id.) Also arriving with Officer Robinson, the Corrections Emergency Response Team ("CERT") removed the unit worker from the area. (Id.)

After the attack, Plaintiff overheard Unit Manager Brown tell Warden Wilkes he was notified of the threat but he did not think of it as serious. (Id. at 15.) Plaintiff was taken to the local hospital for treatment of his wounds. (Id.) In addition to multiple stab wounds receiving stitches, Plaintiff suffered from a broken nose and collar bone. (Id.) After two months of treatment, Plaintiff's stitches were removed, and he has not received any follow up treatment. (Id.) Plaintiff also suffers from emotional distress and nightmares from the attack. (Id.)

Plaintiff alleges all Defendants were deliberately indifferent to his safety. He seeks a declaratory judgment that his Constitutional rights were violated based on the facts as he alleges them, $100,000 in compensatory damages from each Defendant, an additional $50,000 in compensatory damages from Warden Wilkes and Officer Robinson, $25,000 in punitive damages from Officer Robinson and Unit Manager Brown, and $15,000 in punitive damages from Warden Wilkes. (Id. at 18.)

B.   **DISCUSSION**

1.   **Legal Standard for Screening**

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 327 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  An complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the complaint must

provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Warden Wilkes Cannot Be Held Liable Based on a Theory of Supervisory Liability

Plaintiff's complaint fails to state a claim against Warden Wilkes because he is attempting to hold him liable merely in light of his supervisory positions. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676)

(internal quotations omitted). Therefore, to hold these Warden Wilkes liable, Plaintiff must demonstrate that either (1) he actually participated in the alleged constitutional violation, or (2) there is a causal connection between his actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

The only factual allegation Plaintiff makes with respect to Warden Wilkes is after the attack Unit Manager Brown told Warden Wilkes he did not think the threats were serious. (Doc. no. 14, p. 15.) Plaintiff does not allege Warden Wilkes knew anything about the threats prior to the attack or was directly involved in the attack. Thus, Plaintiff fails to state any facts suggesting any Warden Wilkes actually participated in the alleged constitutional violations.

Therefore, Plaintiff must allege a causal connection between any of these Defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated

6

occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff fails to allege facts sufficient to support the necessary causal connection. Plaintiff merely alleges in conclusory fashion Warden Wilkes is responsible for Plaintiff's injuries by failing to act. (Doc. no. 14, pp. 15-18.) Nothing in Plaintiff's complaint indicates Warden Wilkes was responsible for a policy or custom resulting in a violation of Plaintiff's rights, and Plaintiff does not allege any facts to show Warden Wilkes either directed subordinates to act unlawfully or knew they would do so and failed to act in an appropriate manner. Therefore, Plaintiff fails to state a claim upon which relief can be granted against Warden Wilkes, and he should be dismissed from the case.

### 3. Plaintiff Fails to State a Valid Claim against Officer Robinson for Failure to Intervene

In the context of a failure to intervene claim, a prison official can be liable under the Eighth Amendment for failing to take reasonable steps to protect a victim from an ongoing assault by another inmate. Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. 2012) (citing Skritch v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002)); see also Murphy v. Turpin, 159 F. App'x 945, 948 (11th Cir. 2005) (applying deliberate indifference standard to claim prison official failed to intervene in inmate-on-inmate assault). However, in order for liability to attach, prison officials must have been "in a position to intervene." Terry, 376 F. App'x at 896 (citing Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998)). An officer who fails to

7

intervene in a fight between inmates can only be held liable if he "was physically able and had a realistic chance to intervene and act in time to protect the inmate plaintiff." Glispy v. Raymond, No. 06-14269-CIV, 2009 WL 2762636, *3 (S.D. Fla. 2009); see also Posey v. Giles, No. 2:12-CV-906-WHA, 2016 WL 696619, at *5 (M.D. Ala. Jan. 28, 2016) (citing Glipsy), adopted by, 2016 WL 707370 (M.D. Ala. Feb. 22, 2016); Seals v. Marcus, No. 1:11-CV-99 WLS, 2013 WL 656873, at *7 (M.D. Ga. Jan. 25, 2013) (same), adopted by, 2013 WL 663579 (M.D. Ga. Feb. 22, 2013). Plaintiff has the burden of demonstrating the defendant was in a position to intervene but failed to do so. Ledlow, 500 F. App'x at 914. Still, "[r]egardless of the presence or absence of a weapon in the hands of the attacking inmates, 'no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence.'" Seals, 2013 WL 656873, at *8 (quoting Longoria v. Texas, 473 F.3d 586, 594 (5th Cir. 2006)).

Plaintiff alleges Officer Robinson initially left Plaintiff alone when the unit worker attacked. (Doc. no. 14, p. 14.) However, Officer Robinson returned after eight minutes to pull the unit worker off of Plaintiff, bringing with him the CERT team to get the unit worker. (Id.) Plaintiff does not allege Officer Robinson had weapons, a radio, or was otherwise in a position to prevent the attack. Thus, Plaintiff has not alleged Officer Robinson was in a position to realistically prevent or protect Plaintiff from a sudden attack by an armed inmate. Officer Robinson was not constitutionally required to interject himself into the altercation and risk being stabbed himself before backup arrived. See Seals, 2013 WL 656873, at *8; Posey, 2016 WL 696619, at *5. Further, Officer Robinson did in fact intervene when he came back with CERT to remove the unit worker. Thus, Officer Robinson took appropriate

8

measures to gain control over the situation and was not in a position to intervene further. See Terry, 376 F. App'x at 896.

Accordingly, Plaintiff has failed to state a valid claim against Officer Robinson for being deliberately indifferent by failing to intervene in the inmate-on-inmate assault.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's claim against Officer Robinson for deliberate indifference by failing to intervene in an inmate-on-inmate assault be **DISMISSED** for failure to state a claim, Plaintiff's claims against Warden Wilkes be **DISMISSED** for failure to state a claim, and Warden Wilkes be **DISMISSED** from the case. In a companion Order, the Court allows to proceed Plaintiff's claims for deliberate indifference to his safety against Officer Robinson and Unit Manager Brown.

SO REPORTED and RECOMMENDED this 28th day of March, 2019, at Augusta, Georgia.

*[signature]*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA