IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MARQUAVIOUS CONLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 118-189 |
| | ) | |
| SCOTT WILKES, Warden; CLIFFORD BROWN, Unit Manager; and OFFICER ROBINSON, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Plaintiff, an inmate at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Because he is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

### I. SCREENING OF THE AMENDED COMPLAINT

Plaintiff names as Defendants: (1) Scott Wilkes, Warden; (2) Clifford Brown, Unit Manager; and (3) Officer Robinson. (Doc. no. 14, p. 2.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On November 6, 2017, Plaintiff was at the Crisis Special Unit ("CSU") at ASMP. (Id. at 5.) Around 8:00 a.m., Plaintiff was verbally threatened through his cell door by an unknown inmate ("unit worker") working in the CSU. (Id.) The unit worker told Plaintiff he was going to

kill him the first chance he got. (Id.) After being threatened, Plaintiff immediately went to his cell door to inform Officer Robinson. (Id. at 12.) Plaintiff shouted for Officer Robinson, which prompted the unit worker to come back to Plaintiff's cell and call him a snitch. (Id.) Plaintiff then asked the unit worker to leave him alone. (Id.) While speaking to the unit worker, Plaintiff noticed Officer Robinson looking in his direction, and when Officer Robinson and Plaintiff made eye contact, Officer Robinson immediately looked away and disregarded Plaintiff's shouts for help. (Id.) The unit worker then walked away. (Id.)

A little while later, Officer Robinson came to Plaintiff's cell and asked if he wanted to see the doctor. (Id.) At this time, Plaintiff told Officer Robinson about the threats made by the unit worker. (Id.) Plaintiff begged Officer Robinson to tell Unit Manager Clifford Brown and Chief of Security Captain Collier about the threats. (Id.) Officer Robinson said he would. (Id.) Plaintiff next asked to not leave his cell until his life was not in danger, to which Officer Robinson did not respond and walked away. (Id.)

Soon after this, Officer Robinson returned, placed Plaintiff in handcuffs, and escorted him out of his cell. (Id. at 13.) While being handcuffed, Plaintiff asked where the unit worker was and if anything had been done about the threats. (Id.) Officer Robinson told Plaintiff not to worry and that he was ok. (Id.) Officer Robinson escorted Plaintiff to the doctor and left Plaintiff alone to wait with his hands still cuffed. (Id.) At this time, Plaintiff was approached by the unit worker. (Id.) The unit worker told Plaintiff he should kill him now, but he walked off. (Id.) Then, Officer Robinson returned and took Plaintiff to the nurse to check his vital signs. (Id.) Plaintiff informed Officer Robinson about what the unit worker said, which Officer Robinson replied "you ain't [sic] hurt yet, you'll be ok." (Id. at 14.) Officer Robinson also said he spoke to Unit Manager Brown who said he would handle it. (Id.)

2

While being escorted back to his cell by Officer Robinson, Plaintiff was attacked by the unit worker. (Id.) During the attack, Officer Robinson ran away and left Plaintiff alone. (Id.) Plaintiff was stabbed fifteen times. (Id.) Eventually, a nurse came to Plaintiff's aid and tried to pull the unit worker off Plaintiff by hitting the unit worker with a chair. (Id.) About eight minutes later, Officer Robinson came back and, along with the nurse, removed the unit worker from Plaintiff. (Id.) Also arriving with Officer Robinson, the Corrections Emergency Response Team ("CERT") removed the unit worker from the area. (Id.)

After the attack, Plaintiff overheard Unit Manager Brown tell Warden Wilkes he was notified of the threat but he did not think of it as serious. (Id. at 15.) Plaintiff was taken to the local hospital for treatment of his wounds. (Id.) In addition to multiple stab wounds receiving stitches, Plaintiff suffered from a broken nose and collar bone. (Id.) After two months of treatment, Plaintiff's stitches were removed, and he has not received any follow up treatment. (Id.) Plaintiff also suffers from emotional distress and nightmares from the attack. (Id.)

Plaintiff alleges all Defendants were deliberately indifferent to his safety. He seeks a declaratory judgment that his Constitutional rights were violated based on the facts as he alleges them, $100,000 in compensatory damages from each Defendant, an additional $50,000 in compensatory damages from Warden Wilkes and Officer Robinson, $25,000 in punitive damages from Officer Robinson and Unit Manager Brown, and $15,000 in punitive damages from Warden Wilkes. (Id. at 18.)

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds Plaintiff has *arguably* stated a viable Eighth Amendment deliberate indifference claim against Officer Robinson and Unit Manager Clifford Brown. See Farmer v. Brennan, 511 U.S. 824, 834-39 (1994) ("A

prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). Accordingly, process shall issue as to Officer Robinson and Unit Manager Brown. In a companion Report and Recommendation, the Court recommends dismissal of Defendant Warden Wilkes and Plaintiff's claim against Officer Robinson for deliberate indifference by failing to intervene in an inmate-on-inmate assault.

## II. INSTRUCTIONS

**IT IS HEREBY ORDERED** that service of process shall be effected on Officer Robinson and Unit Manager Clifford Brown. The United States Marshal shall mail a copy of the amended complaint, (doc. no. 14), and this Order by first-class mail and request that the defendants waive formal service of the summons. Fed. R. Civ. P. 4(d). Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver. Fed. R. Civ. P. 4(d)(2). A defendant whose return of the waiver is timely does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver. Fed. R. Civ. P. 4(d)(3). However, service must be effected within ninety days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant or the entire case. Fed. R. Civ. P. 4(m). Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate the defendant to effect service.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants, or upon their defense attorney if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court. Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendants

or their counsel.  Fed. R. Civ. P. 5; Loc. R. 5.1.  Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number.  Fed. R. Civ. P. 10(a).  Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by Defendants.  Upon being given at least five days notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action.  Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.  Defendants shall ensure that Plaintiff's deposition and any other depositions in the case are taken <u>within the 140-day discovery period</u> allowed by this Court's Local Rules.

While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address.  Failure to do so will result in dismissal of this case.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution.  Fed. R. Civ. P. 41; Loc. R. 41.1.  If Plaintiff wishes to obtain facts and information about the case from the defendants, Plaintiff must initiate discovery.  <u>See generally</u> Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery).  Plaintiff should begin discovery promptly and complete it within four months after the filing of the first answer of a defendant named in the complaint screened herein.

5

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion. Loc. R. 7.5, 56.1. A failure to respond shall indicate that there is no opposition to the motion. Loc. R. 7.5. Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should a defendant file a motion for summary judgment, Plaintiff is

advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

SO ORDERED this 28th day of March, 2019, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA