IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| MARQUAVIOUS CONLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 118-189 |
| ) | |
| CLIFFORD BROWN, Unit Manager, and ) | |
| BENJAMIN ROBINSON, ) | |
| ) | |
| Defendants. ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Georgia State Prison in Reidsville, Georgia, brought this case pursuant to 42 U.S.C. § 1983, concerning events allegedly occurring at August State Medical Prison ("ASMP") in Grovetown, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). Before the Court is Defendants' pre-answer motion to dismiss, (doc. no. 29), which the Court **REPORTS** and **RECOMMENDS** be **GRANTED** and this case **DISMISSED** and **CLOSED**.

**I. BACKGROUND**

**A. Plaintiff's Amended Complaint**

Plaintiff alleges the following facts, which must be taken as true for purposes of the motion to dismiss.

On November 6, 2017, Plaintiff was housed in the Crisis Special Unit ("CSU") at ASMP.

(Doc. no. 14, p. 5.) Around 8:00 a.m. on that day, Plaintiff was verbally threatened through his cell door by an unknown inmate working in the CSU. (Id.) The unit worker told Plaintiff he was going to kill him the first chance he got. (Id.) After being threatened, Plaintiff immediately went to his cell door to inform Officer Robinson. (Id. at 12.) Plaintiff shouted for Officer Robinson, which prompted the unit worker to come back to Plaintiff's cell and call him a snitch. (Id.) Plaintiff then asked the unit worker to leave him alone. (Id.) While speaking to the unit worker, Plaintiff noticed Officer Robinson looking in his direction, and when Officer Robinson and Plaintiff made eye contact, Officer Robinson immediately looked away and disregarded Plaintiff's shouts for help. (Id.) The unit worker then walked away. (Id.)

A little while later, Officer Robinson came to Plaintiff's cell and asked if he wanted to see the doctor. (Id.) At this time, Plaintiff told Officer Robinson about the threats made by the unit worker. (Id.) Plaintiff begged Officer Robinson to tell Unit Manager Clifford Brown and Chief of Security Captain Collier about the threats. (Id.) Officer Robinson said he would. (Id.) Plaintiff next asked to not leave his cell until his life was not in danger, to which Officer Robinson did not respond and walked away. (Id.)

Soon after this, Officer Robinson returned, placed Plaintiff in handcuffs, and escorted him out of his cell. (Id. at 13.) While being handcuffed, Plaintiff asked where the unit worker was and if anything had been done about the threats. (Id.) Officer Robinson told Plaintiff not to worry and that he was ok. (Id.) Officer Robinson escorted Plaintiff to the doctor and left Plaintiff alone to wait with his hands still cuffed. (Id.) At this time, Plaintiff was approached by the unit worker. (Id.) The unit worker told Plaintiff he should kill him now, but he walked off. (Id.) Then, Officer Robinson returned and took Plaintiff to the nurse to check his vital signs.

(Id.)  Plaintiff informed Officer Robinson about what the unit worker said, to which Officer Robinson replied "you ain't [sic] hurt yet, you'll be ok." (Id. at 14.)  Officer Robinson also said he spoke to Unit Manager Brown who said he would handle it.  (Id.)

While being escorted back to his cell by Officer Robinson, Plaintiff was attacked by the unit worker.  (Id.)  During the attack, Officer Robinson ran away and left Plaintiff alone.  (Id.)  Plaintiff was stabbed fifteen times.  (Id.)  Eventually, a nurse came to Plaintiff's aid and tried to pull the unit worker off Plaintiff by hitting the unit worker with a chair.  (Id.)  About eight minutes later, Officer Robinson came back and, along with the nurse, removed the unit worker from Plaintiff.  (Id.)  Also arriving with Officer Robinson, the Corrections Emergency Response Team ("CERT") removed the unit worker from the area.  (Id.)

After the attack, Plaintiff overheard Unit Manager Brown tell Warden Wilkes he was notified of the threat but he did not think of it as serious.  (Id. at 15.)  Plaintiff was taken to the local hospital for treatment of his wounds.  (Id.)  In addition to multiple stab wounds receiving stitches, Plaintiff suffered from a broken nose and collar bone.  (Id.)  After two months of treatment, Plaintiff's stitches were removed, and he has not received any follow up treatment. (Id.)  Plaintiff also suffers from emotional distress and nightmares from the attack.  (Id.)

Plaintiff alleges all Defendants were deliberately indifferent to his safety.  He seeks a declaratory judgment that his constitutional rights were violated, $100,000 in compensatory damages from each Defendant, an additional $50,000 in compensatory damages from Warden Wilkes and Officer Robinson, $25,000 in punitive damages from Officer Robinson and Unit Manager Brown, and $15,000 in punitive damages from Warden Wilkes.  (Id. at 18.)

### B. Grievance and Procedural History

Attached to their motion to dismiss, Defendants provided the relevant grievance records concerning Plaintiff's allegations. (Doc. nos. 29-4, 29-5; see also Colon Decl., doc. no. 29-2, ¶¶ 11-14.) On January 9, 2018, Plaintiff filed grievance number 258418, stating on November 6, 2017, he was stabbed by inmate "N. Wade" while restrained and waiting to have his vitals checked after a medical visit. (Doc. no. 29-4, p. 2.) On January 18, 2018, Warden Philbin rejected Plaintiff's grievance as untimely. (Id.) There is no record of an appeal. On April 2, 2018, Plaintiff filed grievance number 263564 about the alleged November 6, 2017 stabbing, stating he was assaulted while in restraints by "Nicholas Wade" and standard operating procedure was violated by prison officials allowing another inmate around Plaintiff while he was restrained. (Doc. no. 29-5, pp. 2-3.) On April 11, 2018, Warden Philbin rejected Plaintiff's grievance as untimely, and on July 19, 2018, Plaintiff's appeal of Warden Philbin's rejection was denied because the original grievance was untimely. (Id.)

On August 5, 2019, Defendants filed a pre-answer motion to dismiss. (Doc. no. 29.) Defendants argue Plaintiff failed to properly exhaust administrative remedies concerning his remaining claims. (Id.) On August 22, 2019, Plaintiff filed a motion to stay, in which he mainly responds to Defendants' motion to dismiss by restating many of the allegations in his amended complaint and arguing he properly plead Eight Amendment deliberate indifference claims against Defendants. (Doc. no. 34.)

## II. DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES PRIOR TO FILING THIS LAWSUIT

### A. The Legal Framework

Where, as here, a defendant has filed a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the Eleventh Circuit, "brought" as used in this section of the PLRA means "the filing or commencement of a lawsuit, not . . . its continuation." Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000) (*en banc*); see also Goebert v. Lee Cty., 510 F.3d 1312, 1324 (11th Cir. 2007) ("The time the statute sets for determining whether exhausting of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied."). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also

Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

### B. The Administrative Grievance Procedure

Based on the date of the alleged incident, the administrative grievance procedure applicable in this case is the version of the GDOC's Standard Operating Procedure ("SOP") IIB05-0001, which became effective on July 20, 2015. (Doc. no. 29-3.) The administrative remedies procedure commences with the filing of the Original Grievance, and the inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to sign the Original Grievance and give it to a Counselor. Id. § VI(D)(1)-(4). "The complaint on the Grievance Form must be a single issue/incident." Id. § VI(D)(2). Once the Counselor gives the grievance to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it.

Id. § VI(D)(3), (5)(a). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision, but a onetime ten calendar day extension may be granted. Id. § VI(D)(7).

Grievances involving sexual assault or physical force involving non-compliance with policies are automatically forwarded to Internal Investigations Unit and/or the PREA Coordinator. Id. § VI(D)(8)(a). Once referred, the grievance process terminates, and the inmate will receive notice and must sign a copy of said notice to be filed with the prison's local files. Id. § VI(D)(8)(b-d). Internal Investigations has ninety days from the date of the original grievance to issue a decision. Id. § VI(D)(8)(e). An extension of up to seventy days may be granted. Id. § VI(D)(8)(f). An inmate may not appeal the Warden's decision to refer the grievance to the Internal Investigations. Id. § VI(D)(8)(h).

The inmate then has seven calendar days from the date they receive the response from the Warden or Internal Investigations to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance

has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender, at which time the grievance procedure is complete. Id. § VI(E)(7).

### C. Plaintiff's Failure to Exhaust

Under the second step of Turner, Plaintiff failed to exhaust the administrative grievance process because he filed the grievances outside the ten-day time frame listed in SOP IIB05-0001 § VI(D)(4). (Doc. nos. 29-4, 29-5); Johnson, 418 F.3d at 1159 ("[A]n untimely grievance does not satisfy the exhaustion requirement of the PLRA."). As the Eleventh Circuit explained,

> Importantly, we note that [Plaintiff]'s untimely administrative grievance in this case does not comport with the intent of Congress that prison officials have an opportunity to address the grievance internally and rule on the grievance before the inmate files a complaint in federal court. This is especially so in this case because [Plaintiff] did not request leave to file an untimely administrative grievance and did not assert good cause for his failure to file a timely grievance before he filed his federal complaint. Moreover, none of the aims of § 1997e(a) has been achieved here because prison officials did not review the merits of [Plaintiff]'s complaint—his grievance did not spur the corrective action that might have obviated the need for litigation, there was no filtering of potential frivolous claims, and no development of an administrative record to assist the courts in deciding the controversy. Allowing [Plaintiff]'s untimely grievance to meet the exhaustion requirement would run counter to the understanding that § 1997e(a) requires prisoners to invoke and fully exhaust all available administrative grievance processes.

Johnson, 418 F.3d at 1158-59 (internal citations omitted).

Defendants offer an uncontroverted declaration from the Chief Counselor at ASMP, in which she explains the grievance procedure and that grievances 258418 and 263564 were

9

the only relevant grievances filed by Plaintiff. (Colon Decl., ¶¶ 11-14.) Grievances 258418 and 263564 were filed roughly two and five months, respectively, after the ten-day time frame from November 6, 2017. (See doc. nos. 29-4, 29-5.) Plaintiff offers no argument contradicting Defendants or discussing why he failed to file his grievances timely. (See doc. no. 34.) Thus, as Plaintiff failed to file grievances 258418 and 263564 within the ten-day administrative time frame, they do not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90; Johnson, 418 F.3d at 1159.

Further, with respect to grievance 258418, Plaintiff failed to exhaust the administrative grievance process because he did not appeal its denial. Warden Philbin denied grievance 258418 on January 18, 2018, and Plaintiff was notified of the denial on January 26, 2018. (Doc. no. 29-4.) Plaintiff had seven calendar days from his receipt date to file an appeal to the Central Office of the Commissioner. SOP IIB05-0001 § VI(E)(2). Plaintiff never filed an appeal. (Doc. no. 29-4.) Plaintiff makes no argument regarding the failure to file an appeal. (See doc. no. 34.) Because Plaintiff failed to either appeal grievance 258418 within the administrative deadline or give any reason for not doing so, it does not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90; Johnson, 418 F.3d at 1159.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**, (doc. no. 29), and this case **DISMISSED** and

**CLOSED**.

SO REPORTED and RECOMMENDED this 12th day of September, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA